UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

WINDY LUCIUS

    Plaintiff,
v.

MIAMI PLASTIC SURGERY.

    Defendant.
_____/

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff, Windy Lucius ("Plaintiff") sues Defendant, Miami Plastic Surgery, ("Defendant"), for Injunctive Relief, attorney's fees, litigation expenses and costs under Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-12189 ("ADA"), 28 C.F.R. Part 36, *et seq*.

1. Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1, in that the original transaction or occurrence giving rise to this cause of action occurred in this District.

2. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. *See* also 28 U.S.C. § 2201 and § 2202.

3. Plaintiff is a Florida resident, lives in Miami-Dade County, is *sui juris*, and qualifies as an individual with disabilities as defined by the ADA, and the ADA Amendments Act of 2008, ("AADG") 42 U.S.C. §12101, and the 28 C.F.R. §36.105(b)(2).

4. Plaintiff is legally blind, and substantially limited in performing one or more major

life activities, including, but not limited to, seeing, accurately visualizing her world, and adequately traversing obstacles. As such, is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, et seq., and 42 U.S.C. §3602(h).

5. Plaintiff uses the internet and a mobile device to help her navigate a world of goods, products and services like the sighted. The internet, websites and mobile applications provide her a window into the world that she would not otherwise have. She sues Defendant for offering and maintaining a mobile website (software that is intended to run on mobile devices such as phones or tablet computers) that is not fully accessible and independently usable by visually impaired consumers. Plaintiff uses the Apple Screen Reader VoiceOver software to read computer materials and/or access and comprehend internet mobile website information which is specifically designed for the visually impaired.

6. Plaintiff is also an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting her civil rights, and ensuring, that places of public accommodation and/or their respective and associated websites have complied with the ADA and any other applicable disability laws, regulations, and ordinances.

7. Defendant, Miami Plastic Surgery, owns and operates a plastic surgery clinic branded, "Miami Plastic Surgery" located within this District and open to the public. As a result, a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. Defendant's services are also offered and available to the public through its mobile website. Defendant's medical office is a place of public accommodation under 42 U.S.C. § 12181(7)(F).

8. As the owner, operator, and/or controller of a medical office, Defendant is defined

as a place of "public accommodation" within meaning of the ADA, because Defendant is a private entity which owns and/or operates "a professional office of a health care provider, hospital, or other service establishment," per 42 U.S.C. §12181(7)(F) and 28 C.F.R. §36.104(2).

9. Because Defendant is a health care provider open to the public, each of Defendant's physical establishments are a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation as defined by 42 U.S.C. §12181(7)(F), §12182, and 28 C.F.R. §36.104(2). Defendant also offers those items to the public through its mobile website.

10. Defendant also controls, maintains, and/or operates an adjunct website, https://miamiplasticsurgery.com ("Mobile Website"). One of the functions of the mobile website is to provide public information about Defendant's establishments, including special sales, goods, services, accommodations, privileges, benefits and facilities available to patrons at physical locations. Defendant also sells to the public its services through the mobile website, which acts as a point of sale for goods and services available in, from, and through Defendant's physical locations.

11. Defendant's mobile website is offered as a way for the public to become familiar with the "Miami Plastic Surgery" locations, hours of operation, procedures, and other information Defendant seeks to communicate to the public. The mobile website provides the public information about "Miami Plastic Surgery" surgical and non-surgical procedures, skin care services, available. Through the mobile website the public can book an appointment, join their newsletter to receive updates and exclusive offers directly in your inbox, as well as the ability to contact them online. The mobile website also provides links to "Miami Plastic Surgery" Facebook, YouTube, Instagram, and Tik Tok pages to learn about pop-ups and specials. By this nexus, the mobile

website is characterized as a Place of Public Accommodation subject to Title III of the ADA[1], 42 U.S.C. § 12181(7)(F) and 28 C.F.R. § 36.104(2).

12. Defendant has subjected itself to the ADA because its mobile website is offered as a tool to promote, advertise and sell products and services at their clinics. As a result, Defendant's mobile website must interact with the public, which includes Plaintiff (a visually impaired person). Therefore, Defendant's mobile website must comply with the ADA, which means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the goods and services afforded to the public.[2]

13. Defendant's mobile website provides access to benefits of Defendant's physical locations and Plaintiff was denied those benefits when she could not access Defendant's mobile website. The mobile website has thus integrated with and is a nexus to Defendant's brick and mortar location. Therefore, it is governed by the following provisions:

    a. 42 U.S.C. Section 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

---

[1] Ensuring Web Accessibility for people with disabilities has become a priority for the Department of Justice. The Department of Justice Civil Rights Division has taken the position that both State and local government websites (Title II) and the websites of private entities that are public accommodations (Title III) are covered by the ADA. On March 18, 2022, the DOJ issued guidance on Web Accessibility, see https://beta.ada.gov/resources/web-guidance/. The guidance states that individuals with disabilities should not be denied equal access to information, and inaccessible websites are as excluding as are access barriers to physical locations. DOJ guidance requires that website barriers must be identified, prevented, and removed so that all Title II and Title III entities offer websites that are accessible to people with disabilities.

[2] According to Statista, almost half of web traffic in the United States originated from mobile devices in 2021. Therefore, Defendant knew or should have known that potential customers would be using the mobile version of its website and provided accessibility for blind users.

      b.      42 U.S.C. Section 12182(b)(1)(A)(i) provides: "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity[.]"

      c.      42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals[.]"

      d.      42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others[.]"

      e.      42 U.S.C. Section 12182(b)(1)(B) provides: "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual."

      f.      42 U.S.C. Section 12182(b)(1)(C) provides: "Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity to participate in such programs

or activities that are not separate or different."

g. 42 U.S.C. Section 12182(b)(2)(ii) describes as discrimination: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]"

h. 42 U.S.C. Section 12182(b)(2)(iii) describes as discrimination: "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]'

14. As the owner or operator of the subject mobile website, Defendant must comply with the ADA and the provisions cited above. This includes an obligation to create and maintain a mobile website that is accessible to and usable by visually impaired persons so that they can enjoy full and equal access to the mobile website and the content therein, including the ability to book an appointment, and contact their office through the mobile website.

15. Since the mobile website is open to the public through the internet, by this nexus the mobile website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar clinics that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as are afforded the non-

visually disabled public both online and in the physical locations. As such, Defendant has subjected itself and the mobile website to the requirements of the ADA.

16. Plaintiff attempted to access and/or utilize Defendant's mobile website to test for accessibility, browse through the services online information to educate herself as to "Miami Plastic Surgery" locations, procedures, and any specials being offered, at the brick and-mortar locations, but was unable to, and she is still unable to enjoy full and equal access to the mobile website and/or understand the content therein because several portions of the mobile website do not interface with the VoiceOver screen reader software. Features of the mobile website that are inaccessible to VoiceOver screen reader software users include, but are not limited to, the following (citing the WCAG 2.1 Level A and AA Guidelines):

   i. Guideline 1.1.1 – Non-Text Content. Multiple images are present which are not labeled, yet they are in focus order and are announced to users as they navigate. In this case "Intbanner4" is announced at the top of the 'Cellulite Treatment Miami & Coral Gables, FL' page. This is not announced as an image, so users just hear text and the word 'intbanner4' is not clear or informative.

   ii. Guideline 2.4.3 – Focus Order. Two dialogs were displayed each time users pressed the 'Book Now' button on the homepage. The first dialog is the 'Book an Appointment' form and the second is a smaller, temporary popup displayed below the book an appointment form. The second popup provides instructions and timing information, but neither dialog is announced. Instead, every time we selected the Book an Appointment dialog, then the next element announced when we swiped right was the vertical scroll bar. If users swiped left, then almost all of the time, focus moved back to the underlying page as shown in the second screen capture, so users cannot access the dialog to make an appointment. In the second screen capture, we show that focus moved to an area beneath the Phone field and "invalid data" was announced. Note - in one of the five tests, focus did move to the dialog when we swiped left so, we did not mark this as critical. In the other 80% of the tests, focus failed to move to the dialog so we couldn't proceed with the booking.

   iii. Guideline 2.4.3 – Focus Order (2). The 'Request Appointment' button on the Cellulite Treatment page also opens a dialog with the Book an Appointment form that is not accessible. Each time we selected the Request Appointment button on this page, then a dialog was displayed, but an announcement was not made. If we swiped right, then focus again exited the page and moved to the vertical scroll bar. If users swiped left, then focus returned to the underlying page. As shown in the second screen capture, the

      form dialog is present, but unlabeled links beneath the dialog were announced. Each time we swiped left in this case, focus failed to move to the dialog; focus only moved to the underlying page.

  iv.    Guideline 2.4.4 – Link Purpose (In Context). The graphic link at the top of the homepage contains text such as 'Membership program available. Save every month on your favorite treatments. Restrictions apply. Browser options' but none of this text is announced. It's announced as only "go to http:" and then the URL is announced. None of the text in the image is announced.

  v.    Guideline 2.4.4 – Link Purpose (In Context) (2). The link titled 'up to 90% of women' opens in a new tab and redirects users to a new, third-party website, but it is not announced as an external link. In addition, the percentage symbol is not announced. The result is that the link is incorrectly announced as "up to 90 of women link" and users who select this will unexpectedly find themselves on a new website in a new tab.

  vi.    Guideline 3.3.2 – Labels or Instructions. There are some button icons which are in the focus order, but they are not labeled or announced. When this occurs, users will be aware that they have swiped to a new element, but they won't be able to tell what it is since no announcement is made. For example, on the Contact Us form, both the 'Select Location' and 'Preferred Provider' combo boxes are announced, but in each case, after we swiped from the combo box, then focus moved to the combo box icon, but no announcement is made.

17. The fact that a portion of the WCAG 2.1 Level A and AA Guideline violations may relate to various third-party vendor platforms does not absolve Defendant of culpability. Because health care providers are open to the public, are places of public accommodation, their operators are subject to the requirements of Title III as well. 42 U.S.C. § 12181(7)(F). Those requirements include a prohibition against subjecting patrons with disabilities to discrimination "through contractual, licensing, or other arrangements," such as use of third-party vendors' inaccessible platforms for making reservations. 42 U.S.C. § 12182(b)(1)(A); *See Kohler v Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1264-66 (9th Cir. 2015) (Preexisting obligations under Title III of the ADA may not be avoided through contractual arrangements, and those obligations remain even where compliance is under control of another party); *Robles v. Yum! Brands, Inc.*, 2018 WL 566781, *4 (C.D. Cal. January 24, 2018) (restaurant operators are liable for website and mobile

app accessibility where there is a nexus to the restaurants themselves).

18. As a beneficiary of the mobile website which serves as a gateway to its place of public accommodation, Defendant must comply with the ADA and the provisions cited above. This includes Defendant's obligation to create, maintain and operate a mobile website that is accessible to Plaintiff so that she (as a visually impaired person) can enjoy full and equal access to the mobile website and the content therein.

19. Plaintiff continues to attempt to use the mobile website and/or plans to continue to attempt to use the mobile website in the near future, and in the alternative, Plaintiff intends to monitor the mobile website, as a tester, to determine whether it has been updated to interact properly with screen reader software.

20. The fact that Plaintiff could not communicate with or within the mobile website left her feeling excluded, frustrated, and humiliated, and gave her a sense of isolation and segregation, as she is unable to participate in the same shopping experience, with the same access to goods, services, accommodations, privileges, benefits and facilities, as provided at the mobile website and in the physical location as the non-visually disabled public.

21. As more specifically set forth above, Defendant has violated the above provisions of the ADA by failing to interface its mobile website with software used by visually impaired individuals. Thus, Defendant has violated the following provisions either directly or through contractual, licensing or other arrangements. Defendant's violations have resulted in Defendant denying Plaintiff effective communication on the basis of her disability in accordance with 28 C.F.R. Section 36.303 *et seq*.

    a. by depriving Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its place of public accommodation (42

U.S.C. § 12182(a));

  b. in the denial of providing Plaintiff the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i));

  c. in failing to allow Plaintiff to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii));

  d. by providing Plaintiff a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals (unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others) (42 U.S.C. § 12182(b)(1)(A)(iii));

  e. by failing to afford Plaintiff goods, services, facilities, privileges, advantages, and accommodations in the most integrated setting appropriate to the needs of the disabled individual (42 U.S.C. § 12182(b)(1)(B));

  f. despite separate or different programs or activities provided in accordance with this section, by denying Plaintiff the opportunity to participate in such programs or activities that are not separate or different. (42 U.S.C. § 12182(b)(1)(C));

  g. by a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities (unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations) (42 U.S.C. § 12182(b)(2)(ii)); and,

    h.  by a failure to take such steps as necessary to ensure that disabled individuals are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services (unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden) (42 U.S.C. § 12182(b)(2)(iii)).

  22. As a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the mobile website due to her blindness and the mobile website's access barriers. Thus, Plaintiff as well as others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

  23. Plaintiff desires and intends, in the near future once the mobile website's access barriers are removed or remedied, to use the mobile website, but she is presently unable to do so as she is unable to effectively communicate with Defendant due to her blindness and the mobile website's access barriers. Thus, Plaintiff as well as others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

  24. Because of the nexus between Defendant's plastic surgery clinic and the mobile website, and the fact that the mobile website provides support for and is connected to Defendant's plastic surgery clinic for its operation and use, the mobile website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar location that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities and must not deny those individuals the same full and equal access to and enjoyment of the goods, services,

privileges, and advantages as afforded the non-visually disabled public both online and in the physical locations, which are places of public accommodation subject to the requirements of the ADA.

25. Plaintiff is continuously aware of the violations at Defendant's mobile website and knows that it would be a futile gesture to attempt to use the mobile website as long as those violations exist unless he is willing to suffer additional discrimination.

26. Plaintiff has suffered, and continues to suffer, frustration and humiliation as the result of the discriminatory conditions present at Defendant's mobile website. By continuing to operate its mobile website with discriminatory conditions, Defendant contributes to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public. By encountering the discriminatory conditions at Defendant's mobile website and knowing that it would be a futile gesture to attempt to use the mobile website unless she is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same accommodations readily available to the general public and is deterred and discouraged from doing so. By maintaining a mobile website with violations, Defendant deprives Plaintiff the equality of opportunity offered to the general public.

27. Plaintiff has suffered and will continue to suffer direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the ADA.

28. Plaintiff has a realistic, credible, existing and continuing threat of discrimination from Defendant's non-compliance with the ADA with respect to this mobile website as described above. Plaintiff has reasonable grounds to believe that she will continue to be subjected to discrimination in violation of the ADA by Defendant. Plaintiff desires to access the mobile website

to avail herself of the benefits, advantages, goods and services therein, and/or to assure herself that this mobile website has complied with the ADA so that she and others similarly situated will have full and equal enjoyment of the mobile website without fear of discrimination.

29. Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

30. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter its mobile website to make it readily accessible to and usable by Plaintiff and other persons with vision impairment.

31. As a result of the foregoing, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have her a reasonable attorneys' fees, costs and litigation expenses paid by Defendant pursuant to 42 U.S.C. § 12205.

**WHEREFORE,** Plaintiff, Windy Lucius demands judgment against Defendant, Miami Plastic Surgery, and requests the following injunctive and declaratory relief:

a) The Court issue a Declaratory Judgment that determines that the Defendant's website at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

b) The Court issue a Declaratory Judgment that determines that Defendant's website is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

c) The Court issue a Declaratory Judgment that Defendant has violated the ADA by failing to monitor and maintain its website to ensure that it is readily accessible to and usable by persons with vision impairment;

d) That this Court issue an Order directing Defendant to alter its website to make it accessible to, and useable by, individuals with disabilities to the full extent required by

Title III of the ADA;

e) That this Court enter an Order directing Defendant to evaluate and neutralize its policies and procedures towards persons with disabilities for such reasonable time to allow Defendant to undertake and complete corrective procedures;

f) That this Court enter an Order directing Defendant to continually update and maintain its website to ensure that it remains fully accessible to and usable by visually impaired individuals;

g) An award of attorney's fees, costs and litigation expenses under 42 U.S.C. § 12205; and,

h) Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted this August 29, 2024.

By: */s/ Juan Courtney Cunningham*
Juan Courtney Cunningham, Esq.
FBN: 628166
J. Courtney Cunningham, PLLC
8950 SW 74th Court, Suite 220,
Miami, Florida 33156
T:  305-351-2014
cc@cunninghampllc.com
legal@cunninghampllc.com

*Counsel for Plaintiff*